December 18, 2020

**VIA ECF**

Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *United States v. Usher et al.*, 17 Cr. 19 (RMB)

Dear Judge Berman:

We write on behalf of our clients, Rohan Ramchandani and the Department of Justice ("DOJ"), regarding Messrs. Richard Usher and Ramchandani's request for a modification of the Court's protective order in the above-referenced matter. *See* Dkt. 36 ("Protective Order").

Since the parties submitted a letter to the Court on November 16, 2020 setting forth a proposed timeline for next steps, there has been a change in the discovery schedule in Mr. Ramchandani's proceeding before the Office of the Comptroller of the Currency ("OCC") that necessitates a more expedited timeline. Specifically, Mr. Ramchandani must now complete document production to the OCC by January 15, 2021 under the revised schedule in that case.[1]

Accordingly, counsel for Mr. Ramchandani have now identified the specific records for which he seeks amendment of the Protective Order for his defense in his OCC proceeding, and have met-and-conferred with the DOJ to attempt to reach an agreement over the records at issue. Defense Counsel respectfully ask the Court to modify the Protective Order so that Messrs. Ramchandani and Usher may use 58 documents produced in criminal discovery in defense of the OCC's enforcement actions against them.[2] The DOJ opposes this request.

## I. Mr. Ramchandani's Position

Counsel for Mr. Ramchandani respectfully request that the Court amend the Protective Order to permit him to use 58 documents in his OCC proceeding. This sliver (0.00002%) of the 2.8 million documents produced in criminal discovery would be provided to another federal agency, the OCC. As discussed at our last conference, the DOJ has already provided the OCC with voluminous 302 reports, and the OCC is pursuing an enforcement action based on the very same allegations that were the subject of the criminal trial.

Counsel for Mr. Ramchandani have made extensive and good faith efforts to narrow the parties' dispute to a mere 58 documents, and repeatedly offered to work with the DOJ on adding

[1] As Respondent in a separate OCC action, Mr. Usher does not have the same discovery schedule issue as Mr. Ramchandani and therefore intends to proceed along the timeline set forth in the parties' November 16, 2020 letter.
[2] If helpful, and with the Court's permission, the parties can provide the Court with the 58 documents at issue in a separate filing, and under seal.

protections (such as sealing requirements in the OCC process) to the existing OCC protective order. Nevertheless, the DOJ has been unwilling to compromise as to even a single document. In fact, the DOJ now even goes so far as to make the remarkable claim, contrary to the law and practice in this district, that the trial exhibits admitted into evidence by this Court in an open courtroom are not publicly available documents and cannot be provided to the OCC. The DOJ's opposition to Messrs. Usher and Ramchandani's request—and apparent desire to thwart their defense before the OCC—cannot be squared with the law, the language of the Protective Order, the equities at stake, or the spirit of justice.

The Documents At Issue

The 58 documents fall into three categories:

- 32 documents are transcripts of electronic chatroom conversations involving participants from two or more financial institutions, similar to the chatroom transcripts introduced at the criminal trial without objection by any party. A core allegation in the OCC matter, under the U.S. banking laws, is that Mr. Ramchandani engaged in conduct "contrary to *generally accepted* standards of prudent operation" (emphasis added). Accordingly, the OCC administrative tribunal will be required to analyze whether Mr. Ramchandani's practices were prevalent in the FX industry at the relevant time. These 32 documents are needed to show that the bank trading practices at issue were pervasive throughout the FX industry and thus generally accepted. The privacy interests at stake are de minimis: these financial institutions have produced countless interbank chats in civil litigation—to scores of different litigants—likely including the very same 32 chatroom transcripts at issue (among thousands of other chats); the documents date to before 2014; and neither the individual participants nor the financial institutions that produced them to the DOJ had any expectation of privacy over their contents given that they are, by definition, not internal communications but outside communications between two or more banks.

- 18 documents reflect non-privileged communications between bank counsel and the DOJ regarding the factual or legal basis for the alleged Sherman Act violation at issue in the May 20, 2015 bank plea agreements. Under the applicable statute, a necessary element of the OCC's case against Mr. Ramchandani is that he "caused" Citibank losses in connection with the bank's plea agreement and criminal penalty. To establish this element, the OCC will need to prove, in essence, that Citibank paid penalties because the DOJ was correct in alleging that Mr. Ramchandani violated the Sherman Act. These 18 documents show otherwise.

- Eight documents reflect communications between the DOJ and counsel for the DOJ's cooperating witness, Matthew Gardiner, regarding the factual or legal basis for his alleged Sherman Act violation at issue at the criminal trial and now before the OCC. The DOJ has already selectively provided the OCC with hundreds of pages of reports of its interviews ("302s") with Mr. Gardiner. The eight documents at issue are needed to complete this record, reveal exculpatory statements by Mr. Gardiner, and, if necessary, impeach his credibility.

Mr. Ramchandani also intends to defend himself in the OCC proceeding with the publicly admitted exhibits introduced in open court at the October 2018 criminal trial. *See* Dkt. 36, para. 7. Indeed, in February 2019, at the OCC's request, counsel for Mr. Ramchandani provided the OCC with an encrypted disc containing all of the admitted trial exhibits.

Surprisingly, the DOJ informed us last week that its position is that admitted trial exhibits remain subject to the Protective Order. Defense Counsel are puzzled by this position, as paragraph 7 of the Protective Order expressly provides that there are no restrictions on "publicly available documents." It is a fundamental principle that federal courtrooms are public forums and that members of the public may access evidence admitted in open court. *See Application of Nat'l Broad. Co., Inc.*, 635 F.2d 945, 952 (2d Cir. 1980) ("Once the evidence has become known to the members of the public, including representatives of the press, through their attendance at a public session of court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction."); *U.S. v Sherry*, 107 Fed. Appx. 253 (2nd Cir. 2004) (prosecutors' release of trial exhibits to the press was permitted by SDNY Local Criminal Rule 23.1(c), and "[i]ndeed, if a request had been made to the District Court for the release of trial exhibits, it could not have been turned down"), rev'd on other grounds by *Berwick v. U.S.*, 544 U.S. 917 (2005); *see also* U.S. Courts, Covering Criminal Trials – Journalist's Guide, https://www.uscourts.gov/statistics-reports/covering-criminal-trials-journalists-guide ("Trial exhibits that are admitted into evidence become part of the public record."). It is inconceivable that the government would seek to deprive defendants of the very publicly admitted evidence that led to their acquittal in a parallel proceeding against another federal government entity. Because neither the DOJ nor any third party moved to seal the courtroom during trial, the admitted trial exhibits are unquestionably public in nature.

<u>Privilege Issues</u>

The DOJ's assertion of various privileges over its notes of communications between the DOJ and counsel for the banks and/or Mr. Gardiner is without merit. The attorney-client privilege does not apply to notes reflecting communications *between arm's length represented parties* who are in the midst of negotiating plea or non-prosecution agreements. Nor was there any expectation of confidentiality over this information, where both the DOJ and counsel for its targets knew or should have known that *Brady* obligations could soon require the production of this material to numerous criminal defendants. *See United States v. Williams Companies, Inc.*, 562 F.3d 387, 395 (D.C. Cir. 2009) (party claiming work product protection over documents produced to the government pursuant to a confidentiality agreement "has not shown that it reasonably expected the government would guard the confidentiality of the documents despite its *Brady* and Rule 16 obligations").

Furthermore, any claim of work product protection was waived when the notes were produced to Mr. Ramchandani and other defendants in criminal discovery in multiple cases. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (disclosure to an adversary in litigation waives the work product protection as to the material disclosed); *Kitevski v. City of New York*, 2006 WL 680527, at *4 (S.D.N.Y. Mar. 16, 2006) ("Principles of waiver apply to the law enforcement privilege."). And even absent waiver, Mr. Ramchandani can easily overcome the qualified work product and law enforcement privileges because he has a "substantial need"

for the documents—their contents directly undermine the central claim by the OCC that Mr. Ramchandani's conduct reasonably "caused" Citibank's criminal penalty. *See United States v. Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 190–91 (2d Cir. 2000) (describing the "substantial need" standard), rev'd on other grounds by *In re Grand Jury Proceedings John Doe Co. v. United States*, 350 F.3d 299 (2d Cir. 2003); *see also Tuite v. Henry*, 181 F.R.D. 175, 177 (D.D.C. 1998), aff'd, 203 F.3d 53 (D.C. Cir. 1999) (favoring disclosure when considering whether the qualified law enforcement privilege applies).

The *In re Grand Jury Proceedings* case cited by the DOJ does not create a per se rule that "compelled" (as opposed to voluntary) disclosure can never destroy privilege or work product protection. That case involved the implied waiver doctrine. 219 F.3d 175, 182, 191 (2d Cir. 2000). Here, the implied waiver doctrine is not at issue—Mr. Ramchandani does not argue that the disclosure of certain documents waived privilege over others, or that the government's disclosure to a third party waived privilege as to him. The DOJ has already disclosed the documents at issue to Mr. Ramchandani. As such, no confidentiality—and therefore no privilege—exists as to these documents. *See United States v. Tellier*, 255 F.2d 441, 447 (2d Cir. 1958) ("It is of the essence of the attorney-client privilege that it is limited to those communications which are intended to be confidential. 'The moment confidence ceases,' said Lord Eldon, 'privilege ceases.'"); *Williams & Connolly v. S.E.C.*, 662 F.3d 1240, 1244 (D.C. Cir. 2011) ("In criminal trials, evidentiary privileges may give way for any number of reasons. The government's obligation under Brady v. Maryland to produce evidence favorable to the accused is one example.") (citations omitted).[3]

There are therefore multiple grounds not to countenance the DOJ's claims of privilege over documents it produced to Mr. Ramchandani and others years ago.

<u>Mr. Ramchandani's Request</u>

Mr. Ramchandani's request is exceedingly modest: facing a post-acquittal enforcement action pursued by a United States agency, he asks to be able to present that agency with a mere 58 documents that he believes to be critical to his defense. Modification of the Protective Order in this Court is by far the most likely and efficient way to ensure Mr. Ramchandani's due process rights, and imposes no burden on or risk to the DOJ or third parties given the separate protective order in the OCC case.

Nevertheless, to address any purported privacy concerns, if this application is granted and if requested by the DOJ, Mr. Ramchandani will request an amendment to the OCC protective order such that any particularly sensitive documents among the 58 (and any deposition or hearing

[3] In any event, the DOJ produced these documents with cover letters stating that the DOJ was not "conceding that the nature of the information being provided is exculpatory pursuant to Brady v. Maryland, or that the information is otherwise relevant," rendering their production voluntary as opposed to compulsory. These letters did not seek to reserve any purportedly applicable privileges. Moreover, the DOJ agreed to a Protective Order that expressly grants the defendants the ability to use any document in any "court or government agency in the United States or the United Kingdom" without seeking further permission, and the defendants could, and did, use any document they wished, including *Brady* material, in open court at trial, *see* Trial Tr. 1510:14-24 (admitting and publishing to the jury an exhibit to the 302 report summarizing the DOJ's interview of a trial witness). On these facts, the DOJ cannot claim an expectation of confidentiality over these documents.

testimony regarding these documents) must be kept under seal, as liberally permitted under the OCC's regulations.[4]

Contrary to the DOJ's claims, Mr. Ramchandani does not ask to use these documents for "private" purposes. The OCC enforcement action is a punitive proceeding by an agency of the Department of Treasury to seek to ban Mr. Ramchandani for life from working for an OCC-regulated entity and to impose a $1.5 million fine. The documents would be going to a federal bank regulator that already has open access to the files of all national banks, including Citibank and JPMorgan. This regulator's enforcement counsel closely coordinated their FX investigation with the DOJ itself—counsel for the DOJ even provided comments on the OCC's draft charging documents, and then requested and obtained a stay of the OCC's proceedings for the duration of the criminal case because "[t]he OCC's allegations against Mr. Ramchandani stem from the same body of facts that form the basis of the Antitrust Division's allegations; in fact, some of the allegation in the OCC's Complaint are nearly identical to those in the indictment." At bottom, the DOJ is seeking to hamstring Messrs. Ramchandani and Usher not in private litigation, but by foreclosing access to exculpatory evidence they need to defend themselves in a second enforcement action by the U.S. government.

The DOJ also claims that Messrs. Usher and Ramchandani violated the Court's Protective Order. This assertion yet again fails to appreciate that the parties specifically negotiated a provision of the Protective Order permitting the use of criminal discovery before another "court or government agency in the United States," para. 6, and that through this application, Messrs. Usher and Ramchandani sought to resolve any ambiguity between paragraph 6 and the other provisions. The Court did not credit the DOJ's position at the November 4, 2020 teleconference, instead instructing the parties to meet-and-confer on which specific documents Messrs. Usher and Ramchandani might need in their OCC proceedings. In response to the Court's direction, Mr. Ramchandani acted in good faith by identifying a small subset of critical documents necessary to defend himself in the government's second enforcement action.

Finally, the DOJ's rhetoric aside, Mr. Ramchandani is not requesting the circumvention of any parties' "property" rights or the *Touhy* regulations. The DOJ cites no authority for its position that documents produced to the DOJ, and that the DOJ then produced to numerous criminal defendants, remain the "property" of the original producing parties. Indeed, courts enter protective orders precisely because, absent such orders, there are no restrictions on how litigants can use the documents produced to them. And the *Touhy* regulations cited by the DOJ simply provide a procedure by which to obtain discovery from the federal government; here, Mr. Ramchandani already has the discovery and is seeking a minor modification of the Court's Protective Order requesting the use of a small subset of documents the DOJ already produced to him with a sister government agency.

For these reasons, the Court should grant Mr. Ramchandani's request.

---

[4] *See* 12 C.F.R. 19.33(b) (OCC "may file any document or part of a document under seal if disclosure of the document would be contrary to the public interest. The [ALJ] shall take all appropriate steps to preserve the confidentiality of such documents or parts thereof, including closing portions of the hearing to the public.").

## II. DOJ's Position

The Government opposes Mr. Ramchandani's motion to amend this Court's Protective Order in an attempt to use criminal discovery documents – which he no longer has any right to possess or use – for a purely private purpose. As discussed in more detail below, the Government will not waive objections to the use of any of its own work product or privileged communications, except as authorized pursuant to the Department's *Touhy* regulations, 28 C.F.R. §§ 16.21 *et seq*. The Government will also not waive this objection for any documents owned by third-party banks without their express permission, which Mr. Ramchandani has not yet received.

Mr. Ramchandani is not just asking for these documents to be disclosed to another federal agency, as claimed. He is asking to use these documents as evidence, perhaps on several different occasions, during a lengthy legal proceeding that includes depositions, an evidentiary hearing, and possibly other stages. During such a proceeding, at a minimum, evidence will be disclosed to OCC personnel, the Administrative Law Judge and her staff, witnesses, experts, court reporters, and members of the press or public that attend the proceedings. They presumptively will also be available to the public through requests to the OCC, unless steps are taken for further protection *and* those rules are well-monitored and enforced, which the document owners will be unable to do themselves, given that they are not parties to the OCC proceeding. There is nothing modest about Mr. Ramchandani's request.

Equally important, Mr. Ramchandani appears to misunderstand what relief he can receive through this motion. This Court can rule whether any particular use of a document would be a violation of the Protective Order. But it cannot force any party to consent to another person's use of their records in a proceeding not before this Court; override privilege, work-product, confidentiality, or privacy rights that exist outside the Order; or bind the Administrative Law Judge overseeing the OCC proceedings as to what documents may lawfully come before her. As a result, the Government not only opposes the substance of Mr. Ramchandani's motion, but disputes the entire theory on which it is based – i.e., that one letter to this Court can relieve Mr. Ramchandani from all his obligations to the people and organizations that own the property he seeks to exploit.

The Department of Justice has no stake in the outcome of the OCC's charge against Mr. Ramchandani; his counsel's theory about a government plot to render him defenseless is meritless.[5] The Department does, however, have a *very* great stake in the integrity of its criminal investigations, the *Touhy* process, and the stipulated protective orders into which it enters for the protection of the Government's (and third parties') rights and privileges connected with those

---

[5] As part of its theory, counsel asserts that the Department of Justice "selectively" provided the OCC with FBI agents' witness interview notes, known as 302s. The Department did share some 302s with the OCC and a few other agencies that were participants in parallel investigations into the FX market. What counsel omits, however – even though the Government has explained this to counsel multiple times – is that the Department gave those to the OCC and others under the strict condition that no further disclosure of those documents may be made without express permission from the FBI, including as evidence in the OCC proceeding by any party, including the OCC itself. The Department has recently confirmed that condition with the OCC.

investigations. Mr. Ramchandani demands that this Court prefer his personal interests above all others'; the Government respectfully dissents from that view.

Government Work-Product and Privileged Documents

Twenty-one of the 58 documents on Mr. Ramchandani's list are privileged communications and attorney work-product created by the Department of Justice, mostly handwritten and typewritten notes by DOJ paralegals and attorneys of meetings with investigation subjects. Several of those meetings were held for the purpose of negotiating guilty pleas or other case dispositions of individuals or companies accused of crimes, and the government's team relied upon those notes in later discussions regarding disposition of the case. The Government is entitled to claim privilege and work-product protections on applicable documents, just as private parties are. *See Hickman v. Taylor,* 329 U.S. 495, 511-12 (1947); *New York Times Co. v. U.S. Dep't of Justice,* 939 F.3d 479, 489 (2d Cir. 2019). In addition, these documents reflect confidential and highly sensitive law enforcement strategies, which the Government has a keen interest in protecting from unauthorized view. *See Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998) (a qualified privilege exists "designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement.").

There can be no legitimate dispute that these documents are protectable under the law. Mr. Ramchandani asserts that the conversations that these notes recorded were not privileged, which may be true, but a conversation does not *itself* have to be privileged in order for an attorney's written notes taken during that conversation to be privileged. Case law in this Circuit is replete with instances of courts recognizing privilege and work-product protection for the notes of both government and private attorneys, and their assistants, of non-privileged meetings held in anticipation of litigation. *See, e.g., SEC v. Nadel*, No. CV 11-215(WFK)(AKT), 2012 WL 1268297, *7-*8 (E.D.N.Y. Apr. 16, 2012) (notes of SEC non-attorney personnel taken during investigative witness interviews); *United States v. Arias*, 373 F. Supp. 2d 311, 312-313 (S.D.N.Y. 2005) (defense attorney's notes taken during proffer to the government during criminal investigation). If this Court were to ask Mr. Ramchandani's counsel whether, when they met with the Government multiple times in 2015 and 2016 to discuss the investigation and wrote notes during that meeting, they would claim privilege and work-product status for those notes, surely the answer would be yes.

All these notes were created by their DOJ authors for the purpose of giving legal advice to the United States regarding the foreign currency exchange criminal investigation and the prosecution of Mr. Ramchandani and others – something the undersigned Government attorney can attest to personally, given that she was the author of several of these notes. In addition, these documents reflect the mental impressions, opinions, and conclusions of attorneys and FBI Special Agents, as well as other professionals working under their direction. As the courts cited above have held, the Government is entitled to the same protections as private parties for the work of its legal professionals. Mr. Ramchandani cites nothing to the contrary, only a case that concerned the implications of a third-party's voluntary disclosure of documents to the government (*United States v. Williams Companies, Inc.*), an issue that Mr. Ramchandani has not raised here.

The only reason Mr. Ramchandani was ever allowed access to such sensitive government materials is because, from 2017-2018, he was a defendant accused of a felony. The Constitution and applicable rules and statutes often require discovery of work-product, privileged, or investigative materials, and, as this Court is likely aware, when there is any reasonable dispute over whether the law requires the disclosure, the Government will often err on the side of production in an abundance of caution. The 21 documents at issue here were all produced to Mr. Ramchandani and his co-defendants in (partial) fulfillment of the Government's Rule 16, *Brady*, and *Giglio* obligations. Legally-mandated discovery to a criminal defendant is, by definition, compelled. Compelled disclosure, as opposed to voluntary disclosure, does not waive privilege or work-product. *See In re Grand Jury Proceedings*, 219 F.3d 175, 191-92 (2d Cir. 2000) (noting that waiver is appropriate only in the face of "deliberate, affirmative and selective use of privileged work-product materials by a party," and deeming a corporate officer's grand jury testimony on privileged subjects not of that type). Because the Government was producing both confidential and privileged/work-product information to Mr. Ramchandani as a criminal defendant, it was all the more important that this Court issue a Protective Order strictly limiting the use of that information to the defendants and their counsel – which it did.

Thus Counsel's citations to cases involving parties in civil litigation – one involving a classic voluntary waiver (*In re Steinhardt Partners*) and one involving involuntary waiver merely because the party did not produce a privilege log (*Kitevski v. City of New York*) – simply have no place here. Moreover, counsel's suggestion that a government agency forever loses its privileges when it merely obeys the Constitution and federal rules in criminal cases, which it always strives to do, would essentially mean the government has no privileges in criminal cases, revealing how far Mr. Ramchandani's argument oversteps the law and logic.

As of October 26, 2018, when Mr. Ramchandani was acquitted, he lost his status as a criminal defendant, and thus lost his right to possess and access the criminal discovery. This was reflected in this Court's Protective Order at paragraph 2(c): "following the conclusion of this case, including after all appeals have been exhausted," all discovery "shall be returned to the Government or destroyed…together with any and all copies thereof, to the best of Defense Counsel's ability." As his co-counsel admitted to this Court during the November 4, 2020 telephone conference on this issue, the defendants chose to ignore that provision. They kept a full copy of the discovery documents with their attorneys, with the express intent of potentially accessing and using those documents in the future. *See* Transcript of Conference Nov. 4, 2020, Dkt. 251, at p. 12.

Today, Mr. Ramchandani has no greater privilege to lawfully possess or use these documents than any other private citizen. Mr. Ramchandani, like any private citizen, is invited to file a request under 28 C.F.R. §§ 16.21 *et seq.*, commonly known as the *Touhy* regulations, which govern the provision of material in the Department's files. We have informed his counsel many times that the *Touhy* regulations set forth the law and process by which a U.S. Attorney's Office evaluates requests for Department records in connection with proceedings to which the Department is not a party – including government work-product and investigative materials, if he believes he has a meritorious request for those. There is no reason to believe that he has lacked sufficient time to make such a request. Still, Mr. Ramchandani refuses to do so.

Counsel has informed us that they see no reason to submit a *Touhy* request because they already have the documents. But that is exactly the point: Mr. Ramchandani currently possesses these documents *unlawfully*, and, quite brazenly, is attempting to leverage the fact that he physically possesses the documents into a right to use them. No such right exists; possession is not, in fact, nine-tenths of the law, as the common but mistaken saying goes. Mr. Ramchandani should not be permitted to subvert the *Touhy* regulations and use Department materials by modification of the protective order in the criminal case. If he is allowed to strategically violate this Court's order in that manner, surely other criminal defendants will think twice before obeying similar protective orders that require them to return or destroy documents at the end of a case (a routine requirement), if they have any inkling that the documents may be useful to them later on.

In sum, the Government will consent to Mr. Ramchandani's use of the 21 government work-product, privileged documents only to the extent he makes a *Touhy* request and the Department authorizes disclosure. If he attempts to use any of these materials without following this procedure, regardless of how this Court rules with respect to the Protective Order, the Government will seek to vindicate its rights and privileges, which exist outside the Protective Order, in the appropriate forum.

<u>The Bank Documents</u>

The remaining documents on Mr. Ramchandani's list were produced to the Government by eight different banks. The documents fall into two categories: one, transcripts of online chats between currency traders, and two, correspondence that certain of the banks and their legal counsel sent to the Government, most for the purpose of negotiating guilty pleas or other resolutions of criminal charges.

The Government opposes Mr. Ramchandani's motion to amend the protective order regarding these documents, for the same reason as stated above – former criminal defendants should not be allowed to leverage criminal discovery for private purposes, especially purposes (like defense of the OCC proceeding) that did not even exist when the documents were first produced to the Government. This principal is fundamental to the Protective Order, which provides for use of criminal discovery materials only in connection with the criminal case.

More important, however, amending the Protective Order with respect to these documents is moot. These documents are the property of the banks and/or contain banks' confidential information; they do not derive their confidential status through the Protective Order, that status is inherent in what they are. Thus, this all comes down to whether a bank will permit Mr. Ramchandani to use its confidential documents for the stated purpose. The Government believes that Mr. Ramchandani should seek use of the bank documents through discovery in the OCC proceeding – the forum in which the documents will actually be used – rather than through modification of this Court's Protective Order. If, however, a bank is willing to give such permission, with or without any special protections (filing with the OCC under seal, e.g.), then the Government will waive its objections for that document. Conversely, if a bank does not give its permission, then that should be the end of the inquiry; Mr. Ramchandani has no permission to use that document outside the criminal case, and to do so would violate this Court's Protective Order.

The Government has repeatedly told Mr. Ramchandani that it would benefit him to get the bank notification process started; he has refused. On its own initiative, therefore, on Wednesday December 9, the Government notified counsel for each of the eight banks that their client produced one or more of the documents on Mr. Ramchandani's list. The notification letter, which was identical in substance for all, is attached hereto as **Attachment 1**. As of today, we have received the following comment by email, from counsel representing four banks (we have shared the email with counsel for Mr. Ramchandani):

> The DOJ has notified Barclays, Citi, JPMorgan, and UBS of this issue, and the banks have informed the Department that they do not support the requested amendment to the protective order.

The Government has not received any official comments from the remaining four banks, although one has called with questions. We have offered to share what we have learned from all of the banks with Ramchandani's counsel. The Government asks that, if the Court is inclined to grant any relief to Mr. Ramchandani with respect to the bank documents, the Court wait to rule until all the banks can be heard.

Trial Exhibits

Apart from the 58 documents specifically listed, Mr. Ramchandani states that he intends to use any or all of the approximately 150 admitted trial exhibits from *U.S. v. Usher* during the OCC proceedings, asserting that those are "publicly available" and thus have fallen out of the Protective Order's ambit pursuant to paragraph 7 (providing that, to the extent discovery documents "are also publicly available, nothing in this stipulation shall restrict the use of such publicly available documents"). Last week, counsel informed us for the first time that they have already made a disclosure of these documents, when they provided a disc with a full set of trial exhibits to the OCC in February 2019.

This was, in large part if not in whole, yet another violation of Your Honor's Protective Order. To our knowledge, *none* of these documents is publicly available for inspection or copying (unlike the documents in the case cited by counsel above, *Application of Nat'l Broad. Co., Inc.*) nor is the Government seeking to make them public (unlike in *U.S. v. Sherry*, cited above). At the request of chambers, the Government retrieved the Court's set of trial exhibits on or about October 30, 2018, and, to our knowledge, no copies exist with the Court or the clerk's office, nor were they ever available on a docket or court website. Small portions of these documents were briefly shown on screens in the courtroom during trial, but an entire document was almost never publicly displayed. Moreover, neither the Department of Justice nor the banks are "public record" repositories. When the Department receives requests for documents, including trial exhibits, such as under FOIA, they are not automatically produced. Instead Department personnel go through a review process for privilege, privacy, and other protections, as is required by law and/or longstanding Department policy. One of the issues for review is whether private information was once public knowledge but now "practically obscure." *See Rose v. Dep't of the Air Force*, 495 F.2d 261, 267 (2d Cir. 1974) (noting that "a person's privacy may be as effectively infringed by reviving dormant memories as by imparting new information"), *aff'd*, 425 U.S. 352 (1976); *Judicial Watch v. DHS*, 736 F. Supp. 2d 202, 211 (D.D.C. 2010) (finding "that the passage of time has not diluted the privacy interest at stake and, if anything,

has actually increased [the] privacy interest as the events surrounding the . . . prosecution have faded from memory").

In short, this set of documents was not, and is not, available to any member of the public, and the vast majority of the documents' texts has never been publicized. These documents remain subject to the Protective Order, and Mr. Ramchandani had no right to pass them to the OCC.

It remains an open question how serious of a violation this was and whether the parties can reach any agreements on this large set of documents. The parties have briefly conferred on this issue, and counsel for Mr. Ramchandani has agreed to share an index of the documents with the Government. Many questions remain to be answered, such as which third parties originally produced the documents and whether they consent to this additional use of their confidential information, whether individual privacy rights are implicated, and whether Mr. Ramchandani intends to limit his use of the exhibits in the OCC proceedings to just the publicly displayed portions. All these questions need to be answered before the Government (and, we assume, the interested parties) can form an opinion. As a result, the Government asks that the Court not rule with respect to the trial exhibits until the parties can discuss the matter further.

Full Briefing

We hope the Court finds this letter briefing sufficient to deny Mr. Ramchandani's request for modification of the Protective Order on the current record, without delving into the thorny (and irrelevant) issues of whether Mr. Ramchandani's "substantial need" to use certain of the documents at issue overrides a party's privilege or work-product interest, whether the banks' documents are confidential at all, or whether the Government waives protection for its privileged documents for all purposes merely by providing required criminal discovery to one criminal defendant. The Government believes it is not legally appropriate for any party to lose any substantive rights in its documents on the current motion, but in any event, surely not without a full opportunity to be heard. This joint letter – conceived through successive rounds of competing edits and requiring a rather ruthless brevity – does not provide that opportunity.

Therefore, in the event the Court wishes to take up any of Mr. Ramchandani's arguments aimed at substantively defeating a party's claim of confidentiality or privilege, we respectfully ask for an orderly briefing schedule requiring Mr. Ramchandani to set forth his arguments and supporting case law in full, and then allowing the Government and interested third parties sufficient time and space to respond.

Protection Against Further Violations of the Protective Order

Finally, the Government wishes to raise its growing concern for the integrity of the Court's Protective Order. As described above, we have learned that Mr. Usher has violated the Protective Order at least once, and Mr. Ramchandani at least twice. It is becoming apparent that

their view of what it means to comply with the Protective Order is not the same as the Government's view, or compatible with the law.[6]

The Government respectfully asks for the following, to protect against further breaches: An order requiring Mr. Ramchandani to fully comply with paragraph 2(c) of the Protective Order by destroying the entire discovery set, save for any document(s) for which he has received this Court's and the document owner's consent for use in the OCC proceedings, or for which he has a pending or approved Touhy request, by February 1, 2021. Assuming Mr. Usher makes a similar request for modification to this Court in January, the Government will make a similar request.

* * * * *

Respectfully submitted,

*/s/ Heather Nyong'o*
Heather Nyong'o
Anjan Sahni
Thomas Mueller
*Counsel for Rohan Ramchandani*
WilmerHale LLP
7 World Trade Center
New York, NY 10007

*/s/ Carrie A. Syme*
Carrie A. Syme
Assistant Chief
New York Office, Antitrust Division
U.S. Department of Justice

[6] This is compounded by Mr. Ramchandani's self-defeating argument that he does not need any modification of the Court's Protective Order in order to use discovery documents in the OCC proceeding, because paragraph 6, which discusses use of discovery documents before other U.S. government agencies, already gives him that right. Regardless of what paragraph 6 actually meant at the time it was drafted (the parties do not agree on that point), it did not survive the end of his criminal prosecution; when the case ended, *every* right that he had to use the documents expired by the Order's literal terms. Given that even Mr. Ramchandani is not confident that the "ambiguity" in paragraph 6 gives him the right to use any disclosed documents now, two years after his acquittal, his repeated citation of this clause remains both puzzling and unhelpful.