December 31, 2020

Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *United States v. Usher et al.*, 17 Cr. 19 (RMB)

Dear Judge Berman:

      We respectfully write in connection with our request for clarification as to whether the Court's order of December 21, 2020 applies to exhibits admitted at trial, and to address the authorities cited by the DOJ in its letter of yesterday. As discussed below, the cases relied upon by DOJ underscore the law and practice in this Circuit that exhibits admitted at trial are publicly available absent extraordinary circumstances that do not exist here. Moreover, we understand that the DOJ's position on this issue—that exhibits admitted in an open criminal trial with no application by the government or third party to seal or limit their public disclosure before, during, or in the two years after the trial are nevertheless nonpublic documents—is squarely inconsistent with the longstanding practice of the U.S. Attorney's Office in this District.

      *United States v. Amodeo* (Gov't Ltr at 2) held that an unfiled investigative report prepared by a court officer pursuant to a consent decree carried a "weak" presumption of public access because it "bears only a marginal relationship to the performance of Article III functions," and that this presumption was outweighed by the court officer's concerns that releasing the report would impair her ability to do her job by revealing her "access to confidential informants helpful to her monitoring of the consent decree." 71 F.3d 1044, 1048 (2d Cir. 1995). In stark contrast, the *Amodeo* Court explained, the Second Circuit has "consistently held that the public has an 'especially strong' right of access to evidence introduced in trials," requiring "extraordinary circumstances to justify restrictions," given "the role those documents played in determining litigants' substantive rights—conduct at the heart of Article III." *Id.* at 1048-49. This "especially strong" presumption—not the "weak" one applied in *Amodeo*—exists here. *Id.*

      *Mirlis v. Greer* (Gov't Ltr at 2) presents just such an "extraordinary circumstance" that can overcome the "especially strong" right of public access to trial exhibits. The trial exhibit at issue there was a non-party witness's "video-recorded deposition lasting several hours in which he testified in detail to having also been a victim of [a school leader's] sexual abuse several decades earlier, when [the witness] was a minor and a student at the school." 952 F.3d 51, 54. The party seeking access to this exhibit "had written voluminously on his [internet] blog about the trial and disparagingly about both [the victim] and [the school leader]," and had "informed the court that he sought to copy the video so that he could post it publicly to his internet blog." *Id.* at 55. On these facts, the court found that while "the public is due a strong presumptive right of access" to trial exhibits that "is not easily overcome," the applicant's "motives in obtaining, and intent in releasing, the video" and the witness's "countervailing privacy interests as a minor

victim of sexual abuse perpetrated by a trusted religious figure in the community" outweighed this presumption. *Id.* at 67. These facts do not remotely resemble the dispute here.

And *SEC v. Telegram Group Inc.* and *Encyclopedia Brown Productions Ltd v. Home Box Office Inc.* (Gov't Ltr at 2) involved motions to seal documents—a very different posture than the instant dispute. In *Telegram Group*, while the court partially granted the motion, it declined to seal documents where the parties whose privacy interests were ostensibly at stake did not intervene in the case to seek such a seal, and further declined to seal business information that "does not represent unique analytical insight or information about the non-party's business operations that would advantage a competitor or rival." 2020 WL 3264264, at *6 (S.D.N.Y. June 17, 2020); *see also Littlejohn v. BIC Corp.*, 851 F.2d 673, 679 (3d Cir. 1988) (it is "well established that the release of information in open court 'is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use.'"). In *Encyclopedia Brown*, the court sealed certain records, including "documents expected to be offered as evidence at trial," because they contained "trade secrets" and the "defendants would suffer irreparable harm from [the] disclosure of the confidential information." 26 F.Supp.2d 606, 614 (S.D.N.Y. 1998). Here, neither the DOJ nor the banks that originally produced the documents (many of which had counsel present at trial) moved to seal the exhibits or related testimony before, during, or in the two years since they were published in open court at trial.

The DOJ's claim that Mr. Ramchandani "has put nothing on the scale" inverts the relevant standard. It is the DOJ, not Mr. Ramchandani, that must overcome the "especially strong" presumption in favor of access by articulating "extraordinary circumstances" that justify the suppression of otherwise public documents, which it has not done. *Amodeo*, 71 F.3d at 1048. The DOJ's argument also disregards the numerous letters with authority Mr. Ramchandani has filed over the last several months explaining his need for the very documents that led to his acquittal in order to defend himself in a second enforcement action by the U.S. government based on the same allegations. And it ignores the fact that the only party with which Mr. Ramchandani seeks to use the trial exhibits—the OCC—has extensive supervisory power over the banks it regulates, meaning that the OCC has access to this very type of information, vitiating any alleged privacy concerns over customer names (the one example identified by the DOJ) or any other purportedly sensitive information.

The DOJ's position would also lead to absurd results. In the DOJ's view, whether the government chooses to publish an exhibit to the jury and the public is determinative of whether the public can thereafter access it. If that were the case, the government could evade public scrutiny of vast swaths of its evidence simply by choosing not to publish it, giving it to the jury for deliberations, and then immediately retrieving it after a verdict. This cannot be squared with the "especially strong" presumption recognized in *Amodeo* of the public's right to access trial exhibits.

Finally, the DOJ's assertion that Mr. Ramchandani's application should be denied because of "unclean hands" merely recycles arguments addressed at our last conference on November 5, and ignores the good faith attempts by counsel to resolve through this motion the ambiguity in the Protective Order arising from Paragraph 6's authorization to use documents before other U.S. agencies. In any event, the DOJ's assertion is irrelevant to whether Mr.

Ramchandani should have access to presumptively public evidence, admitted against him at trial, for a subsequent prosecution for the same conduct by another government agency.

Accordingly, consistent with the "especially strong right of access to evidence introduced in trials" in this Circuit, we respectfully seek clarification that the Court's order of December 21, 2020 does not apply to the specific exhibits admitted at trial.

Respectfully submitted,

/s/ Heather Nyong'o
Heather Nyong'o
Anjan Sahni
Thomas Mueller
Counsel for Rohan Ramchandani
WilmerHale LLP
7 World Trade Center
New York, NY 10007